The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ADAMS FINANCIAL PARTNERS, L.P., a Washington limited partnership, and ADAMS FINANCIAL CONCEPTS, LLC, a Washington limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>PATKE & ASSOCIATES LTD., an Illinois company,<br><br>Defendant. | Case No. 2:16-cv-00392-JCC<br><br>ADAMS' RESPONSE RE: INDEPENDENT DUTY DOCTRINE PER DKT. NO. 48<br><br>**NOTED ON MOTION CALENDAR: JUNE 16, 2017**<br><br>**ORAL ARGUMENT REQUESTED** |

## I. OVERVIEW OF OPPOSITION

Just as lawyers owe non-waivable duties of care regardless of (and independent of) any written contract, professional auditors such as defendant Patke and Associates, Ltd. owe duties of care to their clients and others who depend on their professional services. Patke's website affirms those duties: "When the auditor is hired by the fund manager, they work to serve the needs of all the users of the financial statements." Dkt. No. 37-1. The Washington Board of Accountancy's rules and regulations affirm those duties. RCW 18.04.195(1)(a)(iii).[1] The

---

[1] "Any firm that does not have an office in this state but offers or renders attest services [i.e., auditing services]" must be licensed by the Board unless it "[m]eets the board's quality assurance review program requirements authorized by RCW 18.04.055(9) and the rules implementing such section." RCW 18.04.195(1)(a)(iii)(B).

ADAMS' RESPONSE RE: INDEPENDENT DUTY
DOCTRINE PER DKT. NO. 48 - 1
(Case No. 2:16-cv-00392-JCC)

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

professional bodies that govern auditors affirm those duties, which professional standards apply as a matter of law to Patke and its services.  WAC 4-30-048; Dkt. No. 40 (hereinafter "Regan Decl."). Patke's duties of competence, integrity, due care and diligence exist independently of any contract, and are owed to the client and others (such as AFC) who rely on their services.

In adopting the "independent duty doctrine," the Washington Supreme Court held that "an independent tort duty can overlap with a contractual obligation," in which case the plaintiff has remedies in both contract and tort.  *Eastwood v. Horse Harbor Foundation, Inc.*, 170 Wn.2d 380, 386-387, 241 P.3d 1256 (2010).  The Washington Supreme Court has also warned that, outside of the context of claims arising out of construction on real property or real property sales, the doctrine should not apply at all to bar tort claims unless so stated by the Supreme Court. *Eastwood*, 170 Wn.2d at 416; *Elcon Const., Inc. v. Eastern Wash. Univ.*, 174 Wn.2d 157, 165, 273 P.3d 965 (2012); *see also Hendrickson v. Tender Care Animal Hosp.*, 176 Wn. App. 757, 770, 312 P.3d 52 (2013) (acknowledging that restriction and refusing to apply the doctrine at all to professional negligence claims against veterinarian).

Patke cannot avoid or limit its independent duties as an auditor through contract, and indeed no Washington court has ever applied the economic loss rule or the independent duty rule to prevent professional negligence claims against auditors.  Instead, Washington courts recognize that auditors have both statutory and common law duties of care, which are owed to more than just their clients, independently of any contract. *Dewar v. Smith*, 185 Wn. App. 544, 559, 342 P.3d 328, *rev. denied* 183 Wn.2d 1084 (2015).   The Court should strike the "independent duty doctrine" defense altogether as it is inapplicable to these claims as a matter of law.

## II. ARGUMENT

### A. THE INDEPENDENT DUTY DOCTRINE IS APPLIED NARROWLY, AND DOES NOT BAR PLAINTIFFS' TORT CLAIMS.

In 2010, the Washington Supreme Court replaced the "economic loss rule" with the more liberal "independent duty doctrine." *Eastwood*, 170 Wn.2d at 387–389; *Affiliated FM*,

ADAMS' RESPONSE RE: INDEPENDENT DUTY
DOCTRINE PER DKT. NO. 48 - 2
(Case No. 2:16-cv-00392-JCC)

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1  170 Wn.2d at 448–449.  Now, the mere fact that the parties may have a contract does not bar

2  concurrent tort and other claims if the alleged duty breached exists regardless of the contract:

> In every business or contractual relationship, parties will have duties imposed by law in addition to any duties they have assumed by agreement . . . . However, where society has imposed a duty by law, that duty is not abrogated merely because parties also have a business or contractual relationship.  It is ultimately for the legislature and this court to define duties imposed by law in this state.

*Eastwood*, 170 Wn.2d at 407-408 (Chambers, J. concurring).  Thus, the "test is not simply whether an injury is an economic loss arising from a breach of contract, but rather whether the injury is traceable also to a breach of tort duty of care arising independently of the contract." *Eastwood*, 170 Wn.2d at 394.

The Supreme Court also cautioned that generally, the independent duty doctrine will not bar tort claims outside of the narrow context of product liability claims or claims arising out of construction or real estate sales.  *Eastwood*, 170 Wn.2d at 406-407 (Chambers, J. concurring).  Two years later, the Supreme Court again affirmed that the independent duty doctrine is primarily limited "to claims arising out of construction on real property and real property sales." *Elcon Const., Inc. v. Eastern Wash. Univ.*, 174 Wn.2d 157, 165-166, 273 P.3d 965 (2012); *see also Key Dev. Inv., LLC v. Port of Tacoma*, 173 Wn. App. 1, 32, 292 P.3d 833 (2013) ("lower courts should presume that a tort duty exists unless and until the Washington Supreme Court has decided otherwise.").  Duties imposed by a statute will generally be considered to be duties independent of the contract.  *Jackowski v Borchelt*, 174 Wn.2d 720, 734-735, 278 P.3d 1100 (2012).  To summarize, "the Supreme Court took great pains to limit what had been known as the 'economic loss rule' and clarify that it does not bar tort remedies except in fairly unusual circumstances." *Reading Hospital v. Anglepoint Group, Inc.*, 2015 WL 13145347, *3 (W.D. Wa.).

ADAMS' RESPONSE RE: INDEPENDENT DUTY
DOCTRINE PER DKT. NO. 48 - 3
(Case No. 2:16-cv-00392-JCC)

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

B.    **PATKE OWED DUTIES INDEPENDENT OF ITS CONTRACTS.**

1. <u>Auditors have independent duties to those that hire them, and those that rely on their services.</u>

Washington's common law has long recognized that accountants such as Patke can be held liable for their professional negligence, including unreasonable delay in performing their services. *Johnson v. Reehorn*, 56 Wn. App. 692, 784 P.2d 1301 (1990)(reversing summary judgment dismissal of negligence claim against accountant for late filing of taxes); *Micro Enhancement Intern., Inc. v. Coopers & Lybrand, LLP*, 110 Wn. App. 412, 431, 40 P.3d 1206 (2002) (acknowledging that delay in issuing audits can give rise to auditor malpractice claim, but affirming jury verdict of no liability). Plaintiffs' counsel has found no Washington cases applying the independent duty rule in such circumstances, and absence such guidance, the doctrine should be inapplicable here. *Elcon Const.*, 174 Wn.2d at 165-166.

That Patke owed plaintiffs various duties of care here independent of any contract is also confirmed by Washington's statutes and by the facts of this case. The Washington Board of Accountancy has enacted rules and regulations that establish positive, non-waivable duties owed by all auditors. *See generally* RCW Ch. 18.04; WAC Ch. 4-30; *see also Dewar*, 185 Wn. App. at 554-555 (holding that such statutes can establish accountant's independent duties). Thus, Patke owed plaintiffs duties to be "honest and objective [and] not misrepresent facts" (WAC 4-30-040); to comply with the AICPA code of conduct (WAC 4-30-044); to "***complete*** the service[s] with professional competence" (WAC 4-30-046, emphasis added);[2] to comply with all professional standards promulgated by the appropriate regulatory bodies (WAC 4-30-048);[3]

---

[2] If Patke felt it could not complete the Fund's audit and deliver an opinion, its duty was to turn down the engagement. WAC 4-30-046. Patke complains that its "primary issue of concern" was that AFP reclassified the promissory notes to "investments in privately held securities" in AFP's 2009 financial statements. Dkt. No. 47, at p. 2, ll. 12-20. But Patke knew of that reclassification early in the engagement. *E.g.*, Dkt. No. 37-1, at 8, 11. Thus, by at least January 2011 when Patke offered to complete the 2010 audit as well, with full knowledge of the problems about which it now complains, Patke assumed a duty to complete its audit and deliver its audit opinion in a timely manner. WAC 4-30-046.

[3] Primarily the American Institute of Certified Public Accountants ("AICPA") and the Public Company Accounting Oversight Board ("PCAOB").

ADAMS' RESPONSE RE: INDEPENDENT DUTY
DOCTRINE PER DKT. NO. 48 - 4
(Case No. 2:16-cv-00392-JCC)

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

and to "not make false, fraudulent, misleading, deceptive or unfair statements or claims regarding [Patke's] services," which includes a duty not to create a "false expectation of favorable results" (WAC 4-30-054).

As explained in greater detail in the Opposition (Dkt. No. 36), Patke breached all of these duties. As explained in particular by plaintiffs' expert CPA Paul Regan:

> a. Patke failed to promptly conduct its 2009 and 2010 audit services in accordance with the appropriate due care requirements established under the AICPA Code of Professional Conduct . . .;
>
> b. Patke violated supervision requirements established under the [AICPA] Code of Professional Conduct . . .;
>
> c. Communications between Patke and [Adams] . . . during the audit periods were inconsistent with, and violated, Patke's requirement to maintain proper integrity pursuant to the [AICPA] Code of Professional Conduct . . . .

Dkt. No. 40, at 4.

That the engagement letters require Patke to perform in accordance with generally accepted auditing standards does not mean Patke's violations are only breaches of contract:

> While a client contracts with an accountant regarding some general matters, an accountant must make his own decisions regarding many significant matters, and the final decision he makes is not necessarily contingent on the contract he executes with his client. . . . A client should know that an accountant must make certain decisions independently, and the client had the right to rely on the accountant's knowledge and expertise when those decisions are made by the accountant. This knowledge and expertise cannot be memorialized in contract terms, but is expected independent of the accountant's contractual obligations.

*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill.2d 137, 162-63, 636 N.E.2d 503, *cert. denied* 115 S.Ct. 358 (1994).[4] "This duty to observe reasonable professional competence exists independently of any contract." *Congregation of the Passion*, 159 Ill.2d at 164. Plaintiffs may pursue both contract and tort claims here.

---

[4] "[T]he full scope of the work performed by an accountant is not capable of being described in an engagement letter, and that the real benefit of the work of an auditor is the audit itself—not simply the resultant documents." *Magic Circle Corp. v. Crowe Horwath, LLP*, 72 N.E.3d 919, 925 (Ind. Ct. App. 2017).

ADAMS' RESPONSE RE: INDEPENDENT DUTY
DOCTRINE PER DKT. NO. 48 - 5
(Case No. 2:16-cv-00392-JCC)

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

2. <u>Patke owed AFC duties of due care as well as AFP.</u>

Patke contends its contracts were only with AFP, which contention means that the independent duty doctrine would never apply to any of AFC's claims. *Jackowski v. Borchelt*, 174 Wn.2d 720, 734, 278 P.3d 1100 (2012); *see also Robinett v. Opus Bank*, 967 F.Supp.2d 1099, 1103 (W.D. Wa. 2013) (independent duty doctrine inapplicable if no contract).[5] But Patke owed duties to AFC as well as AFP.

As Patke knew from the outset, AFC was the general partner managing the Fund, as well as an investor. Dkt. No. 37-1, at 8. AFC told Patke that AFC also managed separate non-hedge Fund accounts for its investors, that AFC earned a management fee from the Fund and that AFC "intend[ed] to begin marketing the fund and . . . hop[ed] to grow it significantly." Dkt. 38-1, at 115. Patke knew that AFC's ability to market and grow AFP depended on timely audits, knew of AFC's duties to deliver such audits to investors and knew AFC's deadlines for delivering those audits. Dkt. No. 38, at 4, ll. 21-24; Dkt. No. 40, ¶18. Patke also knew that DFI was requiring AFC to "engage an independent auditor to conduct the 2009 fund audit and ***provide a copy of the 2009 fund audit to DFI***." Dkt. No. 38-1, at 90 (emphasis added).

So Patke knew when it was hired that AFC's ability to comply with DFI's requirements and to continue to operate as an investment adviser depended on delivering AFP's audits to DFI, and that AFC's ability to retain investors, grow the Fund and earn management and performance fees depended on delivering timely audits to the Fund's investors (and potential investors). Adams' hiring of Patke was intended to benefit AFC as well as AFP, which Patke understood when it was hired. As admitted by Patke, its professional duties extend to "all the users of the financial statements," which includes AFC. Dkt. No. 37-1. The AICPA's Code of Professional Conduct confirms that Patke owed duties not just to the Fund, but to AFC as well:

---

[5] AFC can still be a third-party beneficiary of those contracts, as AFC chose Patke so AFC could receive direct benefits from the contract's performance. *Kim v. Moffatt*, 156 Wn. App. 689, 700, 234 P.3d 279 (2010).

ADAMS' RESPONSE RE: INDEPENDENT DUTY
DOCTRINE PER DKT. NO. 48 - 6
(Case No. 2:16-cv-00392-JCC)

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

> The accounting profession's public consists of clients, credit grantors, governments, employers, investors, the business and financial community, and others who rely on the objectivity and integrity of certified public accountants to maintain the orderly functioning of commerce. This reliance imposes a public interest responsibility on certified public accountants.

Dkt. No. 40, ¶29. Indeed, the draft audit opinions found in Patke's files are addressed to the "partners of Adams Financial Partners, LP." *E.g.*, Dkt. No. 37-1, at 83. AFC was one of those partners. As Patke itself recognized, Patke's duties flowed to AFC as well as AFP.

That Patke is liable to AFC is also well-established as a matter of law. *Dewar*, 185 Wn. App. at 559. There, the Court of Appeals held that an accountant such as Patke can be liable to a non-client (such as allegedly AFC) when "the purpose and intent of the accountant-client relationship was to benefit or influence the third-party plaintiff." *Dewar*, 185 Wn. App. at 559 (quoting *Builders Bank v. Barry Finkel & Assocs.*, 339 Ill.App.3d 1, 8, 790 N.E.2d 30 (2003)).

Hiring Patke as the Fund's auditor was intended to benefit both AFP and AFC. Patke knew that AFC needed to provide the 2009 audit to DFI in order to avoid any enforcement action. Patke had a duty to complete the Fund's audits in a timely, diligent and professional manner so as to avoid the foreseeable consequences of failing to comply with that DFI requirement. Patke also owed a duty to AFC, as a partner and investor in the Fund, to timely deliver audits as promised. Patke's failure to do so caused AFP to lose actual and potential investors, and ultimately put AFC in the position of having to agree to shut down the Hedge Fund and enter into a consent order with DFI to allow at least AFC to continue to operate.

### III. CONCLUSION

The "independent duty doctrine" is not a defense to any of plaintiffs' claims. Patke's professional duties are independent of any contractual undertaking, and extend to both AFP and AFC. The Court should deny Patke's summary judgment motion, and in particular strike any defense based on the "independent duty doctrine" as being wholly inapplicable here.

ADAMS' RESPONSE RE: INDEPENDENT DUTY
DOCTRINE PER DKT. NO. 48 - 7
(Case No. 2:16-cv-00392-JCC)

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

DATED this 12th day of June, 2017.

s/ *James T. Yand*
James T. Yand, WSBA No. 18730
s/ *Brian W. Esler*
Brian W. Esler, WSBA No. 22168
Miller Nash Graham & Dunn LLP
Pier 70
2801 Alaskan Way, Suite 300
Seattle, WA 98121
Telephone: (206) 624-8300
Fax: (206) 340-9599
E-mail: james.yand@millernash.com
E-mail: brian.esler@millernash.com

Attorneys for Plaintiffs
ADAMS' RESPONSE RE: INDEPENDENT DUTY
DOCTRINE PER DKT. NO. 48 - 8
(Case No. 2:16-cv-00392-JCC)

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing ADAMS' OPPOSITION TO PATKE'S MOTION FOR SUMMARY JUDGMENT on:

>Lori K. O'Tool, WSBA #26537
>Molly F. Kosten, WSBA #25385
>Preg O'Donnell & Gillett PLLC
>901 5th Avenue, Suite 3400
>Seattle, WA  98164-2026
>E-mail:  lotool@pregodonnell.com
>E-mail:  mkosten@pregodonnell.com
>
>Attorneys for Defendant

by the following indicated method or methods on the date set forth below:

[X]   **CM/ECF system transmission.**

[ ]   **E-mail.**

DATED this 12th day of June, 2017.

*s/ Kristin Martinez Clark*
Kristin Martinez Clark, Legal Assistant

4840-9293-2169.3
561370-0001

CERTIFICATE OF SERVICE - 1
(Case No. 2:16-cv-00392-JCC)

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121