THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ADAMS FINANCIAL PARTNERS, L.P., a Washington limited partnership, and ADAMS FINANCIAL CONCEPTS, LLC, a Washington limited liability company,<br><br>Plaintiffs,<br>v.<br><br>PATKE ASSOCIATES LTD., an Illinois company,<br><br>Defendant. | CASE NO. C16-0392-JCC<br><br>ORDER DENYING SUMMARY JUDGMENT |

This matter comes before the Court on the motion for summary judgment by Defendant Patke Associates, Ltd. (Dkt. No. 30). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

**I.   BACKGROUND**

Plaintiff Adams Financial Partners, LP (AFP) is a hedge fund that, along with Plaintiff Adams Financial Concepts, LLC (AFC), was founded by investment advisor Michael Adams. (Dkt. No. 38 at 2.) AFC is the general partner that manages AFP. (*Id.*) By agreement and by law, AFP was required to have its financial statements audited and to produce those audits to its

investors. (*Id.*)

In December 2009, Plaintiffs hired Defendant Patke Associates, Ltd. to conduct an audit of AFP's 2009 financials. (*Id.* at 6; Dkt. No. 38-1 at 124, 132.) Plaintiffs sent the financial statements to Defendant in March 2010. (Dkt. No. 32 at 2.) In July 2011, although the 2009 audit had not yet been completed, Plaintiffs signed a second contract that extended Defendant's services for the 2010 audit. (*See* Dkt. No. 38 at 10-11.)

The parties dispute the nature of each other's contribution to the audits during the ensuing four years. What is undisputed is that Defendant never produced an audit for 2009 or 2010. According to Defendant, this is because Plaintiffs failed to produce information about loans made to entities closely related to Adams and his son, which were not disclosed to investors and had questionable valuations in the financial statements. (Dkt. No. 30 at 3-4, 5-6.) Plaintiffs adamantly dispute this, maintaining that they produced all information requested and that the failure to produce the 2009 and 2010 audits was a result of Defendant's own mismanagement and negligence. (Dkt. No. 36 at 1-2, 18-19.)

In late 2013—at which time the 2009 and 2010 audits were still not produced—the Washington Department of Financial Institutions (DFI) conducted a routine examination of AFC. (Dkt. No. 38 at 12.) Based at least in part on the lack of audits, DFI issued a deficiency letter to AFC and began investigating Plaintiffs. (*Id.* at 13.) DFI ultimately issued a draft order finding that AFC and Adams had violated the Washington Securities Act, a finding that Plaintiffs dispute. (Dkt. No. 31 at 3; Dkt. No. 36 at 2.)

On January 7, 2014, Plaintiffs reached an agreement with the DFI that, if AFC was able to maintain its investment advisor license, Plaintiffs would voluntarily wind down the AFP hedge fund. (Dkt. No. 38 at 14.) The next day, Plaintiffs instructed Defendant to suspend work on the audits. (*Id.*) Defendant then disengaged as Plaintiffs' auditor. (Dkt. No. 38-1 at 177.)

On March 17, 2016, Plaintiffs brought suit against Defendant, alleging breach of contract and breach of professional duties. (Dkt. No. 1 at 4.) Defendant now moves for summary

1. judgment dismissal of both claims. (Dkt. No. 30 at 1.)

## II. DISCUSSION

### A. Summary Judgment Standard

The Court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party must present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248-49. Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B. Whether Plaintiffs Produced Documents

Before addressing the legal issues posed by Defendant's motion, the Court considers the factual issue of whether Plaintiffs produced the necessary documents for Defendant to properly perform the audit. This issue is central to much of the legal analysis.

Defendant states that it "repeatedly asked [Plaintiffs] for additional information regarding the [loans to the closely-held entities] in an effort to confirm the value assigned to them was appropriate." (Dkt. No. 30 at 6.) According to Defendant, Plaintiffs "seldom provided the requested information, but often either failed to provide what was requested, provided the wrong documents, or provided documents and information that raised additional questions." (*Id.*) To support these allegations, Defendant submits a declaration from one of its shareholders, Ronald

ORDER DENYING SUMMARY JUDGMENT
PAGE - 3

Niemaszyk, stating this information essentially verbatim. (*See* Dkt. No. 32 at 1, 3.) The declaration also provides details of the parties' communications from December 2012 to November 2013, with copies of the correspondence attached.[1] (*Id.* at 3; Dkt. No. 32-1 at 13-68.) For example, from late 2012 to mid-2013, Defendant sought information from Plaintiffs about the loans in question. (Dkt. No. 32-1 at 14-56.) Defendant maintains that Plaintiffs' responses were incomplete and that the lack of information prevented it from completing the audit. (Dkt. No. 30 at 6-8.)

According to Plaintiffs, this is a misrepresentation of the parties' communications and Plaintiffs' performance. (*See* Dkt. No. 36 at 21.) Plaintiffs maintain that Defendant omits important events in the intervening three years between the parties' initial agreement and these later communications. (*Id.*) As support, Plaintiffs submit copies of the parties' correspondence and the documents produced by Plaintiffs from November 2010 to November 2011. (Dkt. No. 38-1 at 142-60, 165-75.) Plaintiffs also submit a declaration from Adams stating that, during this time period, he provided all documents requested by Defendant, that he repeatedly asked for updates, and that the delay was in fact due to Defendant's own failure to diligently work on the audit. (Dkt. No. 38 at 7-11.) For example, on December 29, 2010, Adams emailed Kevin Hengtgen, Defendant's junior employee who was assigned to Plaintiffs' 2009 audit. (*Id.* at 165.) Feeling that he heard little from Defendant since hiring the firm, Adams asked, "Would you update me on the status of the audit?" (*Id.*; *see also* Dkt. No. 37-1 at 15, 17; Dkt. No. 36 at 9.) On January 4, 2011, James Lensing, one of Defendant's principal auditors, responded:

> I apologize that we have not yet responded to you, Kevin is no longer with the firm, and I was going through his emails this evening and just noticed your message. I also noticed that you sent some additional information on December 7 and December 8 that I was not aware we had received, so [I] will go through this and get back to you as soon as possible.

(Dkt. No. 38-1 at 167.) On July 18, 2011, Defendant emailed Adams requesting certain

---

[1] No specific details or documentary evidence was provided regarding pre-December 2012 correspondence. (*Compare* Dkt. No. 32 at 3 *with id.* at 4-5.)

ORDER DENYING SUMMARY JUDGMENT
PAGE - 4

documents, which Adams produced on July 28, 2011. (*Id.* at 172.) On November 28, 2011, Adams again emailed Defendant asking, "What remains to be done for the audit?" (*Id.* at 175.)

Given this evidence, the Court determines that there is a dispute of material fact as to the cause for Defendant's delay in conducting Plaintiffs' audit. As will be discussed below, this dispute renders summary judgment inappropriate on many of the legal issues presented.

### C.    *In Pari Delicto* (Equal Fault)

Another preliminary matter is the application of the *in pari delicto*, or equal fault, doctrine. There are two issues at play: one legal, one factual.

First, the parties dispute whether the *in pari delicto* doctrine is valid under Washington law. Plaintiffs maintain that the doctrine has been abrogated in favor of comparative fault. (Dkt. No. 36 at 23.) Defendant asserts that, while the *in pari delicto* doctrine is not as well-established, Washington courts do apply it. (Dkt. No. 47 at 10.)

A review of Washington law reveals that neither party is precisely right or wrong. The key question is not which doctrine is the prevailing standard, but whether the underlying claim sounds in tort or contract. Comparative fault is the standard for the former; *in pari delicto* is applicable to the latter. *Compare* Wash. Rev. Code § 4.22.005 (establishing comparative fault in actions "seeking to recover damages for injury or death to person or harm to property"), *and ESCA Corp. v. KPMG Peat Marwick*, 959 P.2d 651, 655-56 (Wash. 1998) (applying the comparative fault statute in a tort case), *with Golberg v. Sanglier*, 639 P.2d 1347, 1352-53 (Wash. 1982) (discussing *in pari delicto* doctrine in contract case), *and Fallahzadeh v. Ghorbanian*, 82 P.3d 684, 688 (Wash. Ct. App. 2004) (same), *and Evans v. Luster*, 928 P.2d 455, 458 (Wash. Ct. App. 1996) (same). Since the comparative fault statute was adopted in 1973, Washington courts have discussed the *in pari delicto* doctrine in tort cases only as it applies to indemnity between joint tort-feasors—not as a bar to a plaintiff's recovery.[2] Thus, the *in pari*

---

[2] *See Fortune View Condo. Ass'n v. Fortune Star Dev. Co.*, 90 P.3d 1062 (Wash. 2004); *Herberg v. Swartz*, 578 P.2d 17 (Wash. 1978); *Toste v. Durham & Bates Agencies, Inc.*, 67 P.3d 506 (Wash. Ct. App. 2003); *Sabey v. Howard Johnson & Co.*, 5 P.3d 730 (Wash. Ct. App. 2000);

*delicto* doctrine would be inapplicable to Plaintiffs' negligence claim, but could bar their contract claim.

This leads to the factual issue. The *in pari delicto* doctrine would bar Plaintiffs' contract claim only if the parties were in fact at equal fault. As noted above, there is a factual dispute as to where the blame lies. Thus, the Court cannot determine at this time whether Plaintiffs' breach of contract claim is precluded.

### D.   Breach of Contract Claim[3]

#### 1. Lack of Explicit Timeframe

Defendant first argues that no breach occurred because the parties' contract contained no deadline and allowed Defendant to decline to issue an audit. (Dkt. No. 30 at 10-11.)

However, where a contract is silent as to the deadline for performance, the Court must impose a reasonable time. *Pepper & Tanner, Inc. v. Kedo, Inc.*, 535 P.2d 857, 859 (Wash. Ct. App. 1975). "A reasonable time is to be determined by the nature of the contract, the positions of the parties, their intent, and the circumstances surrounding performance." *Id.* "Normally, a determination of what constitutes a reasonable time is a question for the trier of fact." *Jarstad v. Tacoma Outdoor Recreation, Inc.*, 519 P.2d 278, 283 (1974).

Such is the case here. There is a factual dispute as to what caused Defendant's delay: its own lack of diligence or Plaintiffs' failure to produce evidence. Moreover, the parties' contract states: "Neither party shall be liable to the other for any delay . . . due to causes beyond its

---

*Wagner v. Beech Aircraft Corp.*, 680 P.2d 425 (Wash. Ct. App. 1984); *Massingale v. Nw. Cortez, Inc.*, 620 P.2d 1009 (Wash. Ct. App. 1980); *Guard v. Town of Friday Harbor*, 592 P.2d 652 (Wash. Ct. App. 1979); *Weston v. New Bethel Missionary Baptist Church*, 598 P.2d 411 (Wash. Ct. App. 1978).

[3] In a footnote, Defendant appears to argue that it had a contractual duty to only AFP. (Dkt. No. 30 at 10 n.41.) "Relegating substantive arguments to footnotes is dangerous business." *F.D.I.C. v. Red Hot Corner, LLC*, 2014 WL 5410712 at *1 (D. Nev. Oct. 22, 2014). "If an argument is worth making, a party should put the argument in the body of its brief." *Bach v. Forever Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1127, 1132 (W.D. Wash. Feb. 13, 2007). The Court declines to consider that issue.

reasonable control." (Dkt. No. 32-1 at 11.) Based on these and other circumstances in this case, it is for the jury to determine a reasonable timeframe for Defendant's performance, regardless of whether that performance was production of an audit or declination to produce one.

### 2. Plaintiffs' Performance

According to Defendant, any breach it committed was excused by Plaintiffs' failure to produce the information required to perform the audit. (Dkt. No. 30 at 13.) However, as noted above, Plaintiffs' alleged failure to perform is a factual dispute that must be resolved at trial. Summary judgment on this issue would be premature.

### 3. Causal Link Between Defendant's Actions and Plaintiffs' Damages

Defendant argues that Plaintiffs cannot show that any of its action caused their damages. (Dkt. No. 30 at 14.) Instead, Defendant asserts, Plaintiffs' damages came from their own dilatory conduct, violation of the Washington Securities Act, and decision to wind down the hedge fund. (*Id.* at 15.) Plaintiffs respond that Defendant's failure to timely produce an audit directly resulted in Plaintiffs' loss of existing and potential investors, as well as the DFI enforcement action. (Dkt. No. 36 at 22.) Plaintiffs acknowledge that DFI did not require the hedge fund to wind down, but note that they were essentially forced to in order to maintain AFC's investment advisor license. (*Id.* at 18.)

Again, as discussed above, there is a factual dispute as to the reason why no audit was produced. In addition, Plaintiffs have produced declarations from investors stating that the lack of audit caused them not to invest in the hedge fund. (Dkt. No. 44 at 3; Dkt. No. 45 at 3.) Plaintiffs also present evidence that the lack of audit was a significant concern for DFI in its investigation of AFP's financials. (Dkt. No. 41 at 2.)

In sum, there is a factual dispute as to the cause of Plaintiffs' damages. Summary judgment is not appropriate on this issue, nor on Plaintiffs' contract claim as a whole.

//

//

**E.    Negligence Claim**

1. <u>Independent Duty Doctrine</u>

Defendant argues that the independent duty doctrine prevents Plaintiffs from bringing any negligence claim against it. (Dkt. No. 47 at 9.)

Under this doctrine, a plaintiff can bring a tort claim for conduct arising out of a contractual relationship if the defendant owed him or her a duty of care independent of the contract. *Eastwood v. Horse Harbor Found., Inc.*, 241 P.3d 1256, 1262 (Wash. 2010). This doctrine superseded the previous "economic loss rule," which "often barred a plaintiff from bringing a [negligence] claim against a defendant who had contracted with the plaintiff against potential economic liability." *Donatelli v. D.R. Strong Consulting Eng'rs, Inc.*, 312 P.3d 620, 625 (Wash. 2013). The independent duty doctrine has been applied "to a narrow class of cases, primarily limiting its application to claims arising out of construction on real property and real property sales." *Elcon Const., Inc. v. East. Wash. Univ.*, 273 P.3d 965, 969 (Wash. 2012). The doctrine is not a rule of general application. *Id.* The Washington Supreme Court has specifically directed that the doctrine should not apply "'unless and until this court has, based upon considerations of common sense, justice, policy and precedent, decided otherwise.'" *Id.* at 969-70 (quoting *Eastwood*, 241 P.3d at 1276). The court "took great pains to limit" the doctrine and to "clarify that it does *not* bar tort remedies except in fairly unusual circumstances." *Reading Hosp. v. Anglepoint Grp., Inc.*, 2015 WL 13145347 at *3 (W.D. Wash. May 26, 2015) (Coughenour, J.).

Based on this clear caution, as well as the lack of any Washington case law indicating that the independent duty doctrine should apply to professional services such as auditors, the Court declines to apply the doctrine to bar Plaintiffs' negligence claim.

2. <u>Independent Duty Owed to Plaintiffs</u>

Defendant further argues that it owed no independent duty to Plaintiffs. (Dkt. No. 30 at 15.) Defendant reasons that, as an auditor, its duty is to the public, meaning Plaintiffs cannot sue

for a breach of that duty. (*Id.* at 18.)

The public duty doctrine protects defendants from suit where the duty breached was owed to the public in general, "*i.e.*, a duty to all is a duty to no one." *Bailey v. Town of Forks*, 737 P.2d 1257, 1259 (Wash. 1987); *see also Babcock v. Mason Cty. Fire Dist. No. 6*, 30 P.3d 1261, 1267 (Wash. 2001) ("Whether the defendant is a governmental entity or a private person, to be actionable, the duty must be one owed to the injured plaintiff, and not one owed to the public in general.").

As the United States Supreme Court has explained, an auditor serves as a "public watchdog," owing "complete fidelity to the public trust." *United States v. Arthur Young & Co.*, 465 U.S. 805, 817-18 (1984). For this reason, under Washington law, a public auditor does not owe a fiduciary duty to its client. *See Micro Enhancements Int'l, Inc. v. Coopers & Lybrand, LLP*, 40 P.3d 1206, 1218 (Wash. Ct. App. 2002). This makes good sense: an auditor's job is to accurately inform the public about its client's financials, but disclosing such information might not always be in the client's best financial interest.

This does not mean, however, that an auditor is free from any duty to its client as a provider of professional services. Specifically, Washington has a statutory scheme imposing certain duties on professionals like accountants and auditors. *See* Wash. Rev. Code chap. 18.04; *see also* Wash. Rev. Code § 18.04.025(18) (defining "[p]ractice of public accounting" as "performing or offering to perform by a person or firm holding itself out to the public as a licensee, for a client or potential client, one or more kinds of services involving the use of accounting or auditing skills"). These include the duty to: undertake professional services only when one "reasonably expect[s] to complete the service with professional competence," Wash. Admin. Code (WAC) 4-30-046; be "honest and objective" and not "misrepresent facts," WAC 4-30-040; and "comply with rules, regulations, and professional standards promulgated by the appropriate bodies for each service undertaken," including the American Institute of Certified Public Accountants (AICPA), WAC 4-30-048. Again, this makes good sense. If, as Plaintiffs

1  allege, Defendant misrepresented its progress on the audit and failed to exercise diligence, it
2  would be fair to hold Defendant liable for the damages its lack of professionalism caused.

3  Plaintiffs have produced evidence that Defendant's performance fell below generally
4  accepted professional standards set forth by AICPA. Plaintiffs' expert, Certified Public
5  Accountant (CPA) D. Paul Regan, opines that Defendant: (1) failed to promptly conduct its 2009
6  and 2010 audit services with the required due care, (Dkt. No. 40 at 14-31); (2) violated
7  requirements as to the supervision of its employees, (*id.* at 32-35); and (3) failed to show the
8  appropriate integrity in its communications with Plaintiffs, (*id.* at 35-42). Regan supports his
9  opinion with citations to the AICPA Code of Professional Conduct and generally accepted
10 auditing standards, as well as the record produced on summary judgment.

11 Defendant submits a conflicting expert declaration by CPA Michael Ueltzen. (Dkt. No.
12 31-1 at 24-64.) Ueltzen states that Defendant "complied with professional ethical or auditing
13 standards" in its work for Plaintiffs. (*Id.* at 60.) According to Ueltzen, the problem was that
14 Defendant "was unable to obtain sufficient appropriate audit evidence" from Plaintiffs. (*Id.*)
15 Without this necessary information, Defendant asserts, it would actually have been a breach of
16 professional standards to issue an audit. (Dkt. No. 30 at 18.) This argument goes back to the
17 factual issue of whether Plaintiffs provided the necessary information to conduct the audit. And,
18 the conflict between the expert declarations is an issue to be resolved at trial. Summary judgment
19 would be inappropriate on this issue.

20        3.  <u>Lack of Causal Link Between Alleged Breach and Damages</u>

21 Finally, Defendant maintains that any breach of its professional duty did not cause
22 Plaintiffs' damages. (Dkt. No. 30 at 18.) But, as discussed above, this is factually disputed.

23 The Court declines to grant summary judgment on Plaintiffs' negligence claim.

24 **III.   CONCLUSION**

25 For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 30) is
26 DENIED.

1    DATED this 31st day of July, 2017.

                                                                                  _____
                                                                                  John C. Coughenour
                                                                                  UNITED STATES DISTRICT JUDGE